[Cite as *State v. McAfee*, 2024-Ohio-1132.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
|     Plaintiff-Appellee | |
| -vs- | Case No. 2023CA00052 |
| PATRICK W. MCAFEE | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:    Appeal from the Stark County Court of Common Pleas, Case No. 2022-CR-2379


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    March 25, 2024


APPEARANCES:


For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza, South, Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Avenue, N.W.
Suite #600
Canton, Ohio 44702

*Hoffman, J.*

**{¶1}** Defendant-appellant Patrick W. McAfee appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on two counts of aggravated possession of methamphetamine and two counts of aggravated possession of drugs, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On December 14, 2022, the Stark County Grand Jury indicted Appellant on two counts of aggravated possession of methamphetamine, in violation of R.C. 2925,03(A)(1) and (C)(1)(c), felonies of the third degree; and two counts of aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(b), felonies of the third degree. Appellant appeared for arraignment on January 6, 2023, and entered a plea of not guilty to the Indictment.

**{¶3}** The matter proceeded to jury trial on April 4, 2023. The following evidence was presented at trial.

**{¶4}** Tina Huff testified, in early October, 2022, she was arrested for possessing 5 ½ grams of methamphetamine. In order to avoid jail time, Huff agreed to work as a confidential informant for the Alliance Police Department. Huff informed officers she routinely purchased methamphetamine from Appellant.

**{¶5}** Prior to the first controlled buy, officers searched Huff for drugs and fitted her with a camera and recording device. Officers provided Huff with money to complete the purchase and dropped her off near her home. After text messages were exchanged between Huff and Appellant, Appellant met Huff at her house. Huff gave Appellant $150.00, for 7 grams of methamphetamine, her usual purchase. Appellant left and Huff

waited for him to text her he was on his way back. Huff explained this was their typical routine. Appellant returned sometime later with the drugs.

{¶6} On October 25, 2022, Huff met Officer McCord in an alley near her home. Officer McCord "geared me up, checked me, patted me down, checked that I didn't have nothing." Transcript of Proceedings, Vol. I, p. 130. Officer McCord took Huff's purse and provided her with money for the transaction. Huff returned home and texted Appellant. After Appellant collected the money, Huff waited several hours for him to return. Huff explained the transaction occurred outside the house because her then-boyfriend did not know what she was doing and did not approve of her drug use.

{¶7} The state offered State's Exhibits 1 and 2. Huff identified the exhibits as screenshots of text messages between herself and Appellant from October 14, and 25, 2022. Huff explained she provided Officer McCord with screenshots of the text messages. Thereafter, the state played two videos from the transactions between Huff and Appellant. Huff described what was happening in each video. She identified her own voice, Appellant's voice, and Officer McCord's voice. While viewing the first video, Huff explained, after she received the drugs from Appellant, she went inside rather than straight to the alley to meet Officer McCord in order to avoid suspicion. During this time, she maintained contact with Officer McCord through text messages. The events depicted in the second video played out in a similar fashion.

{¶8} Sergeant Christopher McCord with the Alliance Police Department testified he was a detective in the Special Investigative Unit in October, 2022. Sometime prior to October 14, 2022, the department received a request for a welfare check on Huff, who was having a mental health episode. The responding patrolmen informed Sergeant

McCord Huff had been using methamphetamine and was digging holes in the ceiling of her residence because she believed listening devices were hidden in the ceiling. The patrolmen found methamphetamine in the residence and intended to charge Huff with possession. The patrolmen believed Huff would make a good confidential informant and contacted Sergeant McCord.

{¶9} Sergeant McCord described the process of using confidential informants and noted each confidential informant must sign a contract agreeing to general ground rules. Sergeant McCord and Detective Rajcan met with Huff to discuss the possibility of her working as a confidential informant. Huff signed the contract and informed the detectives Appellant was her supplier.

{¶10} The first controlled buy occurred on October 14, 2022. Sergeant McCord and Det. Rajcan instructed Huff to text Appellant and ask for her usual purchase amount. Once Appellant confirmed the buy, Sergeant McCord made copies of the buy money on a special copy machine and fitted Huff with an audio/video device, which was concealed on Huff's person. Sergeant McCord explained, "It's a small battery pack with a wire that connects to * * * a button camera." Tr., Vol. I, p. 203. After searching Huff for drugs and money, Sergeant McCord dropped off Huff near her then-boyfriend's residence where she was living. Sergeant McCord was positioned in an unmarked vehicle approximately one and a half blocks away. He was in plain clothes. Sergeant McCord was able to monitor 95% of what was said in the transmission.

{¶11} Appellant arrived and Huff gave him $150.00. Appellant left and returned sometime later. After speaking briefly with Huff, Appellant handed her a cigarette pack which contained the drugs. Huff waited five minutes before meeting Sergeant McCord in

a nearby alley.  Sergeant McCord noted he could see and hear Huff during this time. Huff handed the cigarette pack to Sergeant McCord.  After removing the recording device, Sergeant McCord instructed Huff to go home and told her he would speak with her soon.

**{¶12}** When Sergeant McCord returned to the police station, he field-tested the drugs, which were presumptive positive for methamphetamine, weighed the drugs at just under 7 grams, completed his report, then sent the report and the narcotics to the Stark County Crime Lab.  Sergeant McCord texted Huff and informed her the drugs were real.

**{¶13}** The second controlled buy occurred on October 25, 2022.  Sergeant McCord repeated the same process of searching Huff, fitting her with a wire, and providing her with buy money, which had been photocopied.  Sergeant McCord dropped off Huff away from her residence.  Unlike on October 14, 2022, Appellant arrived by car to pick up the money from Huff.  Appellant took a much longer time returning with the drugs and the battery pack on the recording device died and needed to be replaced.  Sergeant McCord had just finished replacing the battery pack when Appellant returned to Huff's residence.  Appellant handed Huff a cigarette pack, entered his vehicle, and left the area. Huff waited then texted Sergeant McCord.  A short time later, Huff met Sergeant McCord in the same alley and handed him the cigarette pack.  Sergeant McCord field-tested the drugs, which were again presumptive positive for methamphetamine and weighed approximately 7 grams.  Sergeant McCord advised Huff this was the last buy she would have to do.

**{¶14}** Sergeant McCord testified, when Appellant was subsequently arrested, he only had a few dollars on his person.  Police did not recover the buy money.  Sergeant McCord explained Appellant was not arrested immediately after the second controlled

buy in order to protect Huff, adding such was common practice to protect confidential informants.

{¶15} City of Alliance Police Detective Robert Rajcan, who is assigned to the Special Investigative Unit, testified he was involved in an operation with a confidential informant and Appellant on October 14, 2022. Sergeant McCord, who was a detective at the time and Det. Rajcan's partner, informed Det. Rajcan he had cultivated a confidential informant who could purchase methamphetamine from a known drug trafficker. Sergeant McCord identified Appellant as the target of the investigation. Det. Rajcan assisted Sergeant McCord in fitting the confidential informant with a wire and with the other procedures involved in conducting a controlled buy.

{¶16} Det. Rajcan recalled Huff texted Appellant to set up a purchase of methamphetamine on October 14, 2022. Huff was provided with $150.00, with which to purchase 7 grams of methamphetamine. Appellant arrived at Huff's residence on a bicycle. Det. Rajcan was positioned approximately seven (7) blocks away and was monitoring on a secured channel in the event Sergeant McCord needed assistance. Det. Rajcan explained the recording device Huff wore was also a transmitter which transmitted to his radio in real time.

{¶17} Following the transaction, Det. Rajcan downloaded the video taken on the recording devise worn by Huff. Det. Rajcan provided an explanation of the download system used by the Alliance Police Department. He recalled he personally watched the videos of the October 14, 2022 transaction, ensured all of the material was transferred onto disks, then placed the disks into evidence.

**{¶18}** Det. Rajcan testified, during the second controlled buy on October 25, 2022, he and Sergeant McCord followed the exact same protocol as the first buy. Det. Rajcan noted Appellant arrived at Huff's residence in a car. Appellant advised Huff he had to travel to Sebring to obtain the methamphetamine. While waiting for Appellant to return, the battery on the recording device died. Sergeant McCord had just finished changing the battery when Appellant returned.

**{¶19}** Det. Rajcan stated, even if video or audio equipment fails or the quality of a recording is poor, such does not mean a buy did not occur. Det. Rajcan explained, given the procedures taken throughout the process, to wit: searching the confidential informant, providing him/her with photocopied money, coupled with the fact, after meeting with the target, the confidential informant no longer has the buy money, but has the drugs, the only conclusion one could reach is that a drug transaction occurred. Det. Rajcan acknowledged things do not always go as planned, but officers attempt to control as much as possible. He added Sergeant McCord was in a position from where he could monitor Huff and the residence, and the buys "actually 100 percent happened." Transcript of Proceedings, Vol. II, p. 312.

**{¶20}** Following Det. Rajcan's testimony, the state rested. Appellant did not call any witnesses on his behalf.

**{¶21}** After hearing all the evidence and deliberating, the jury found Appellant guilty of all four counts in the Indictment. The trial court scheduled a sentencing hearing for April 10, 2023. At the sentencing hearing, the trial court merged Counts 1 and 2 of the Indictment and also merged Counts 3 and 4 of the Indictment. The state elected to

have Appellant sentenced on Counts 1 and 3.  The trial court imposed an aggregated term of incarceration of 48 months.

{¶22} It is from his convictions and sentence Appellant appeals, raising the following assignments of error:


I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED.

II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.


I, II

{¶23} We elect to address Appellant's assignments of error together.  In his first and second assignments of error, Appellant challenges his convictions as against the sufficiency and weight of the evidence.

{¶24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, paragraph two of the syllabus (1997). Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, while weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. A finding a conviction is supported by the manifest weight of the evidence, however, necessarily includes a finding the conviction is supported by sufficient evidence and will

therefore be dispositive of the issues of sufficiency of the evidence. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11.

**{¶25}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶26}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶27}** Appellant was convicted of two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1) and (C)(1)(c), which provides:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

* * *

(c) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated trafficking in drugs is a felony of the third degree, and, except as otherwise provided in this division, there is a presumption for a prison term for the offense. * * *

{¶28} Appellant was also convicted of two counts of aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(b), which provides:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs.

The penalty for the offense shall be determined as follows:

* * *

(b) If the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense.

**{¶29}** Appellant asserts his convictions were based upon insufficient evidence as the state failed to prove beyond a reasonable doubt he was in possession of methamphetamine and/or the buy money. Appellant further argues his convictions were against the manifest weight of the evidence as the testimony of the state's witnesses was not credible. We disagree.

**{¶30}** " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Former R.C. 2925.01(L), current R.C. 2925.01(K). However, possession may be actual or constructive. *State v. Garza*, 5th Dist. Stark No. 2020CA00018, 2020-Ohio-4001, ¶16, citing *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989).

**{¶31}** To establish constructive possession, the evidence must prove the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *Garza*, supra, at ¶16, citing *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (2000). Circumstantial evidence establishing the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler,* supra; *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 50. "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. The issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

**{¶32}** The evidence presented at trial established Huff contacted Appellant on two occasions. Both times Huff asked Appellant for her "usual," 7 grams of methamphetamine. Huff routinely purchased methamphetamine from Appellant, whom she identified in open court. On October 14, and 22, 2022, Appellant arrived at Huff's residence. Huff gave Appellant $150.00. Appellant left and returned later the same day, handing Huff a cigarette pack. Inside each cigarette pack was approximately 7 grams of methamphetamine. Both controlled buys were video and audio recorded. The two videos were played for the jury. Huff, Sergeant McCord, and Det. Rajcan each described the events depicted on the videos. Det. Rajcan testified the recordings were encrypted and could not be altered. Huff identified the voices on the videos. At one point, she stated the voice belonged to Appellant, but corrected herself, and stated the voice belonged to

Sergeant McCord.  We do not find Huff's mistake, then correction, was an attempt to mislead the jury.

**{¶33}**  Sergeant McCord and Det. Rajcan each testified about the protocols taken when conducting a controlled buy.  Prior to the buy, the confidential informant is searched for drugs and money before receiving any buy money.  The money to be used for the buy is photocopied using a special copy machine.  The confidential informant is fitted with a camera and audio recording device.  Sergeant McCord and Det. Rajcan followed this procedure with Huff.  During both controlled buys, Sergeant McCord was positioned in an unmarked vehicle approximately one and a half blocks away.  He observed the transactions through binoculars.  Det. Rajcan was positioned approximately seven (7) blocks away and was monitoring on a secured channel in the event Sergeant McCord needed assistance.

**{¶34}**  After the buys were completed, Huff met Sergeant McCord and handed over the cigarette packages.  Sergeant McCord again searched Huff, removed the recording device, and field tested the drugs.  Once he was back at the station, Sergeant McCord logged the drugs into evidence and completed his report.  Det. Rajcan downloaded the recordings, then watched the videos to ensure the information was properly transferred from the device onto a disk before placing the disks into evidence.

**{¶35}**  The contents from both cigarette packages Appellant provided to Huff tested positive for methamphetamine and weighed approximately 7 grams.  This information was contained in the lab reports.  The parties stipulated to the lab reports.

**{¶36}**  Appellant places great emphasis on the contradictory testimony of Sergeant McCord and Det. Rajcan regarding Sergeant McCord's experience in conducting

controlled buys. Sergeant McCord testified he had been involved in "hundreds of controlled buys." Tr., Vol. I, p. 233. On cross-examination, Det. Rajcan indicated Sergeant McCord "hasn't been with me, not hundreds of buys, no." Tr., Vol. II, p. 327. On redirect, Det. Rajcan stated he had worked with 300 different officers during his tenure with the Alliance Police Department. Appellant also points to allegedly "false and misleading" statements made by Sergeant McCord during his testimony in support of his assertion his convictions were against the manifest weight of the evidence.

{¶37} A jury is free to accept or reject any and all of the evidence offered by the parties and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, citing *State v. Nivens*, 10th Dist. Franklin App. No. 95APA09-1236, 1996 WL 284714.

{¶38} The trier of fact, in this case the jury, was vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Moreover, the jury was free to believe some, all, or none of the testimony of any witnesses. *Domigan v. Gillette*, 17 Ohio App.3d 228, 229, 17 OBR 494, 479 N.E.2d 291 (1984). The jury herein obviously viewed the allegedly "false and misleading testimony" for what it was – clarifications, explanations, and additional information.

{¶39} We find the jury could reasonably infer from the evidence presented at trial Appellant exercised dominion and control over the drugs. *State v. McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 294299. Accordingly, we find

Appellant's convictions were not against the manifest weight of the evidence and were based upon sufficient evidence.

**{¶40}** Appellant's first and second assignments of error are overruled.

**{¶41}** The judgment of the Stark County Court of Common Pleas is affirmed.


By: Hoffman, J.
Delaney, P.J.  and
Wise, J. concur