[Cite as *State v. Jefferson*, 2019-Ohio-156.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JOHN MARTELL JEFFERSON | : | Case Nos. 18CA2 and 18CA3 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
Pleas, Case Nos. 2014-CR-0769 and
2017-CR-0393


JUDGMENT:          Affirmed


DATE OF JUDGMENT:          January 18, 2019


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

GARY BISHOP          GREGORY SCOTT ROBEY
Prosecuting Attorney          14402 Granger Road
By: JOSEPH C. SNYDER          Cleveland, OH  44137
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH  44902

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant Jon Martell Jefferson appeals the December 12 and 13, 2017 judgments of conviction and sentence of the Court of Common Pleas of Richland County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS & PROCEDURAL HISTORY

{¶ 2} On November 23, 2014 at approximately 1:00 a.m, Ohio State Highway Patrol Trooper Colt Browne was patrolling the area of Cook Road and South Main Street in Mansfield Ohio when he spotted a silver Chevy Malibu which appeared to be traveling faster than the posted speed limit. As he watched, the driver, later identified as Jefferson, ran a red light. Browne got behind the vehicle and followed a short distance before observing Jefferson turn into a private driveway without signaling. Based on these two traffic infractions, Browne pulled into the driveway beside Jefferson.

{¶ 3} As Browne pulled into the driveway Jefferson momentarily opened his door illuminating the interior lights. Brown could see Jefferson was alone, and that he was not wearing a seat belt. As Browne activated his overhead lights and began calling in the traffic stop, Jefferson backed out of the driveway and took off at a high rate of speed. Browne followed as Jefferson led him on a chase through the residential neighborhood.

{¶ 4} It had rained earlier that evening, making the roadways wet and slick. There was still a mist falling as Jefferson sped through the neighborhood and an apartment complex parking lot at 75 miles per hour. The speed limit in the area is 25 miles per hour.

{¶ 5} Jefferson eventually turned into a yard, bailed from the car and fled on foot. Browne gave chase, yelling for Jefferson to stop and get on the ground. As Jefferson

ran, Browne noted him digging around at the waistband of his pants and putting his hands in his front hoodie pocket. Jefferson jumped over a short retaining wall and fell on the other side face down. He still had his hands in his hoodie pocket. Jefferson then rolled over, looked at Browne, got up and ran again. Browne again shouted for Jefferson to stop. When Jefferson still failed to comply, Browne deployed his taser, causing Jefferson to fall to the ground. Browne held Jefferson there until backup arrived moments later.

{¶ 6}     Sergeant Toby Smith and troopers Matthew Soeder and Shaun Robles arrived to assist. Robles cuffed Jefferson, rolled him over and conducted a pat down search which resulted in the discovery of a loaded .38 caliber Smith and Wesson revolver in Jefferson's hoodie pocket. The gun was later tested and found to be operable. It was also discovered to be stolen. Troopers got Jefferson to his feet and conducted a more thorough search of his person in front of a cruiser dash camera. Six bundles of cash totaling $14,295 were found in Jefferson's hoodie and pants pockets. Asked why he ran Jefferson stated he had been drinking and was on postrelease control.

{¶ 7}     While all this was happening, a woman known to Jefferson had appeared at the scene. She yelled at officers while taking cell phone video. At one point, while officers were conversing between themselves, Jefferson nodded at the woman, and then to the area near the retaining wall were he had fallen. He did this four times before Browne told Robles that he thought Jefferson had lost or thrown his hat in that area asked him to check. Upon hearing the request, Jefferson closed his eyes, exhaled and looked away. In the area where Jefferson fell, Robles recovered a Crown Royal whiskey bag containing what was later confirmed to be 73.587 grams of crack cocaine, pressed powder cocaine and two pill bottles containing oxycodone and buprenorphine.

{¶ 8} Upon this discovery Jefferson began breathing heavily and told troopers he did not feel well and needed to go to the hospital. He was transported to Mansfield MedCentral.

{¶ 9} As a result of these events, on January 13, 2015, the Richland County Grand Jury returned a seven count indictment in case number 2014-CR-0769 charging Jefferson as follows:

{¶ 10} Count 1: Failure to comply with the order or signal of a police officer and creating a substantial risk of serious physical harm to persons or property in violation of R.C. 2921.331(A) and (B)(5)(a)(ii), a felony of the third degree.

{¶ 11} Count 2: Operating a motor vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree.

{¶ 12} Count 3: Trafficking in cocaine, in an amount greater than 27 grams, but less than 100 grams in violation of R.C. 2925.03(A)(2) and (C)(4)(f), a felony of the first degree. Count 3 contained a forfeiture specification pursuant to R.C. 2941.1417.

{¶ 13} Count 4: Possession of cocaine in an amount greater than 27 grams, but less than 100 grams in violation of R.C. 2925.11(A) and (C)(4)(e), a felony of the first degree. Count 4 contained a forfeiture specification pursuant to R.C. 2941.1417.

{¶ 14} Count 5: Aggravated possession of drugs (oxycodone) in an amount less than the bulk amount in violation of R.C. 2925.11(A) and (C)(1)(a), a felony of the fifth degree. Count 5 contained a forfeiture specification pursuant to R.C. 2941.1417.

{¶ 15} Count 6: Receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree.

{¶ 16}   Count 7: Having weapons under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree.

{¶ 17}   Jefferson pled not guilty to the charges. On November 26, 2014, he was released from jail after signing a surety and recognizance bond.

{¶ 18}   On August 7, 2015, Jefferson filed a motion to suppress arguing that Trooper Browne did not actually observe a traffic control signal violation and therefore the initial attempt to stop Jefferson's vehicle was a violation of his Fourth Amendment rights.

{¶ 19}   A hearing was held on the matter on August 19, 2015. The state presented testimony from Browne and the dash camera video. On August 26, 2015, the trial court issued a judgment entry overruling Jefferson's motion.

{¶ 20}   Trial was set for February 1, 2016, but Jefferson failed to appear. A bench warrant was issued for his arrest and he was apprehended on June 8, 2017. On June 12, 2017, the Richland County Grand Jury returned an indictment in case number 2017-CR-0393 charging Jefferson with one count of failure to appear in violation of R.C. 2937.99(A) and (B), a felony of the fourth degree.

{¶ 21}   The 2014 case proceeded to a jury trial beginning November 22, 2017. Before trial, the state dismissed count 2 of the indictment, operating a motor vehicle under the influence of alcohol or drugs, and Jefferson pled guilty to count 7, having weapons under disability. After hearing the above outlined evidence, the jury found Jefferson not guilty of receiving stolen property, but guilty of the balance of the charges.

{¶ 22}   The charge of failure to appear was tried to the court after the jury retired to deliberate. The parties stipulated to the fact that Jefferson failed to appear after being released on bond. The parties further stipulated to three exhibits - two bonds signed by

Jefferson, and the bench warrant issued for his arrest. The only question presented to the trial court was whether failure to appear on the bonds signed by Jefferson resulted in a violation of R.C. 2937.99(A) and (B).

{¶ 23} Sentencing took place on December 12, 2017. The trial court first announced its finding on the record that Jefferson had signed both a recognizance bond and a surety bond, and that he was therefore liable under the statute for failing to appear and guilty of the same. Immediately before sentencing, Jefferson filed a pro se motion for a new trial, which the trial court denied. Jefferson was subsequently sentenced to 18 months for failure to appear and 36 months for failure to comply with the order or signal of a police officer. Trafficking in cocaine and possession of cocaine were merged for sentencing and the state elected to proceed on the trafficking charge for which Jefferson received a mandatory prison term of 11 years. The court additionally imposed a sentence of 12 months for possession of oxycodone and 36 months for having weapons under disability. The court ordered the sentences to run consecutively. Finally, the trial court imposed the balance of Jefferson's postrelease control time – 550 days.

{¶ 24} Jefferson filed an appeal and the matter is now before this court for consideration. He raises 11 assignments of error as follow:

I

{¶ 25} "THE TRIAL COURT ERRED WHEN IT FAILED TO FULLY ADVISE APPELLANT OF HIS CONSTITUTIONAL RIGHTS PRIOR TO ACCEPTING A GUILTY PLEA ON THE HAVING A WEAPON WHILE UNDER A DISABILITY COUNT."

II

{¶ 26}   "THE COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

III

{¶ 27}   "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN CONVICTIONS AGAINST APPELLANT ON THE FAILURE TO COMPLY COUNT, THE TRAFFICKING IN COCAINE COUNT, THE POSSESSION OF COCAINE COUNT, AND THE AGGRAVATED POSSESSION OF DRUGS.

IV

{¶ 28}   "APPELLANT'S CONVICTIONS ON THE FAILURE TO COMPLY COUNT, THE TRAFFICKING IN COCAINE COUNT, THE POSSESSION OF COCAINE COUNT, AND THE AGGRAVATED POSSESSION OF DRUGS COUNT, ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

V

{¶ 29}   "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHO COMMITTED ERRORS WHICH, IF THEY HAD NOT BEEN MADE APPELLANT WOULD HAVE BEEN ACQUITTED."

VI

{¶ 30}   "APPELLANT WAS DENIED A FAIR TRIAL BY THE CUMULATIVE ERRORS BY THE TRIAL COURT."

VII

{¶ 31}   "APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."

VIII

{¶ 32}   "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S PRO SE MOTION FOR A NEW TRIAL."

IX

{¶ 33}   "APPELLANT'S CONVICTION IN CASE NUMBER 2017-CR-0393, OF FAILURE TO APPEAR, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

X

{¶ 34}   "THE TRIAL COURT ERRED WHEN IT IMPOSED AN AGGREGATE 21+ YEAR PRISON TERM THAT IS NOT SUPPORTED BY THE RECORD."

XI

{¶ 35}   "THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE PRISON TERMS THAT ARE NOT SUPPORTED BY THE RECORD."

{¶ 36}   For ease of discussion, we address some of Jefferson's assignments of error together as well as out of order.

I

{¶ 37}   In his first assignment of error, Jefferson argues the trial court inadequately advised him of his constitutional right not to testify at trial before accepting his plea of guilty to having weapons under disability. We disagree.

{¶ 38}   We review a trial court's compliance with Crim.R. 11(C) de novo. *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶ 39}   Crim.R. 11(C)(2) governs the acceptance of guilty and no contest pleas in felony cases. The purpose of Crim.R. 11(C) is to provide information to the defendant so that he can make a voluntary and intelligent decision regarding his choice to plead. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). A plea entered by a criminal defendant must be made knowingly, intelligently and voluntarily.

{¶ 40}   Crim.R. 11(C) contains constitutional advisements and nonconstitutional advisements. In advising a defendant of the constitutional rights contained in Crim.R. 11(C)(2)(c), strict compliance is required.  *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. Crim.R 11(C)(2)(c) contains five constitutional rights that the defendant must be advised of. Specifically, the right to a jury trial, the right to confront one's accusers, the privilege against compulsory self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt. On the other hand, substantial compliance is sufficient for the nonconstituional advisements contained in Crim.R. 11(C)(2)(a) and (b). *Id.* at ¶ 14.

{¶ 41}   Jefferson acknowledges that the trial court advised him that he has a constitutional right not to testify at trial. Transcript of trial (T) 19. Jefferson argues, however, that this was not enough and asserts the trial court was required to advise him that if he chose not to testify at trial no one could comment on his silence. But nothing in Crim.R. 11 (C)(2)(c) requires the trial court to so advise. *State v. Kittelson*, 11th Dist. Lake No. 2016-L-62, 2016-Ohio-8430 ¶ 27 citing *State v. Porterfield*, 11th Dist. Trumbull No. 2002-T-0045, 2004-Ohio-520, ¶ 59, reversed on other grounds, 106 Ohio St.3d 5, 2005-

Ohio-3095, 829 N.E.2d 690. We therefore find Jefferson was properly advised of his privilege against compulsory self-incrimination.

{¶ 42}   The first assignment of error is overruled.

II

{¶ 43}   In his second assignment of error, Jefferson makes two arguments. He first argues the trial court erred in denying his motion to suppress based on facts not presented at the hearing. Second, he argues the evidence presented did not establish probable cause to stop his vehicle. We disagree.

{¶ 44}   As stated by the Supreme Court of Ohio in *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

> "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  Id., citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accepting those facts as true, we must then "independently determine as a matter of law, without deference to

the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 45}    Generally, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996)

{¶ 46}    Jefferson first argues the trial court improperly considered events that took place after he pulled into the private driveway because there was no testimony at the suppression hearing as to what took place after.  We note, however, that Trooper Browne's dash camera video of the entire event was entered into evidence at Jefferson's request. Transcript of Suppression (TS) at 32. The trial court indicated in its judgment entry that it had reviewed the video and drew its conclusions from the video as well as testimony during the hearing. We therefore reject Jefferson's argument.

{¶ 47}    Jefferson next argues the evidence produced at the suppression hearing did not establish probable cause to stop his vehicle as no traffic violation took place.

{¶ 48}    First, as the trial court noted in its judgment entry, even if the evidence of the stop light violation was inconclusive based on the video, Browne still had probable cause to stop Jefferson based on the turn signal violation which is clear on the video, and additionally, the court found Browne credible as to the traffic light violation.

{¶ 49}    Second, a show of force by a law enforcement officer is a required predicate to a seizure for purpose of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Until an officer's attempt to affect an investigatory stop succeeds by obtaining the suspect's compliance, no seizure takes

place and no Fourth Amendment review of the reasonableness of the officer's decision to intrude on the suspect's privacy is warranted. *California v. Hodari D*, 499 U.S 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

{¶ 50}   Here, as the trial court concluded, there was no seizure of Jefferson immediately following the turn signal violation. Jefferson had already pulled into the driveway before Browne activated his overhead lights. Seconds later, Jefferson backed out of the driveway and fled.  Moreover, regardless of whether Jefferson fled before or after Browne activated his overhead lights, no seizure occurred as a law enforcement officer's activation of overhead lights does not constitute a seizure for Fourth Amendment purposes. *State v. Terry*, 130 Ohio App.3d 253, 719 N.E.2d 1046, (3rd Dist. Marion 1998).

{¶ 51}   The second assignment of error is overruled.

### III, IV, IX

{¶ 52}   We address Jefferson's third, fourth, and ninth assignments of error together. Jefferson argues his convictions are against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 53}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences,

consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

Failure to Comply

{¶ 54}    While Jefferson does not dispute he fled from Trooper Browne, he contends the state failed to produce sufficient evidence to elevate the offense to a third degree felony by failing to produce evidence that he caused a substantial risk of serious physical harm to persons or property. He argues there was no crash caused and there were no pedestrians or vehicles on the road during the chase.

{¶ 55} R.C. 2921.331(C)(5) provides:

> A violation of division (B) of this section is a felony of the third degree
>
> if the jury or judge as trier of fact finds any of the following by proof
>
> beyond a reasonable doubt:
>
> " * * *
>
> (ii) The operation of the motor vehicle by the offender caused a
>
> substantial risk of serious physical harm to persons or property.

{¶ 56}    A substantial risk is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 57}    Jefferson sped through a residential neighborhood at 75 miles per hour, where the posted speed is 25 miles per hour. The roads were wet and slick and there were vehicles parked on the street. Jefferson committed numerous traffic violations while fleeing, and both endangered himself, Trooper Browne, and the property of others. T. 167, 171, 185.

{¶ 58}    As the state notes, this court as well as other appellate districts have found that "a substantial risk to one's self is sufficient for a conviction under R.C. 2921.331(B) as a felony of the third degree." *State v. Hopkins*, 5th Dist. Richland No. 09-CA-66, 2010-Ohio-2441 ¶ 22 citing *State v. Hall*, 8th Dist. No. 92625, 2009-Ohio-5695 (finding that sufficient evidence of substantial risk of physical harm existed where offender ran three to four stoplights, "nearly" collided with a parked car, and where offender jumped from the vehicle while it was still moving, almost running over himself); *State v. Moore*, 8th Dist No. 61673, (January 28, 1993) (finding that offender put himself and passenger in danger of serious physical harm by refusing to submit to officer's order); *State v. Payne*, 3rd Dist. No. 5-04-21, 2004-Ohio-6487 (determining that offender who ignored ten stop signs and exceeded speeds of one hundred miles per hour and wrecked his car, causing his vehicle significant damage, had placed himself and others at substantial risk of serious harm).

{¶ 59}    A crash with a stationary object at 75 miles per hour could well have been fatal for Jefferson. Further, while Jefferson argues there was no crash, "the mere fact that Appellant did not cause an actual collision with another vehicle or serious harm is

irrelevant. Here, he was convicted under R.C. 2921.331(C)(5)(a)(ii), which deals with a "substantial risk." "Because appellant was fortunate enough not to actually cause harm is of no consequence." *Hopkins*, supra, ¶ 24. We therefore reject Jefferson's argument.

### Possession of Drugs

{¶ 60}   Jefferson next argues the state failed to prove he possessed the drugs found in the Crown Royal bag and therefore failed to prove the charges of trafficking in cocaine, possession of cocaine and aggravated possession of drugs.

{¶ 61}    "Possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. To establish constructive possession, the state must show that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist.2000). Circumstantial evidence that the defendant was located in very close proximity to drugs may show constructive possession. *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242 (8th Dist.1993); *State v. Morales*, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714, 2005 WL 2175144, ¶ 50; State v. Moses, 5th Dist. No. 2003CA00384, 2004-Ohio-4943, 2004 WL 2260571, ¶ 9. Ownership of the drugs need not be established for constructive possession. *State v. Smith*, 9th Dist. No. 20885, 2002-Ohio-3034, 2002 WL 1363704, ¶ 13, citing *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist.1993).

{¶ 62}    Testimony at trial established that as Jefferson fled on foot from Browne, he had his hands in his hoodie pocket and was fumbling at the waist band of his pants. T. 186-187. When Jefferson fell, his hands were still in his pocket and near his waistband. T. 187-188. A few minutes later, after Jefferson is apprehended, Browne can be heard on his on Trooper Robles cruiser video, which was played for the jury, telling Robles "his hat fell off or he threw it over there," referring to the area where Jefferson fell. T. 200-204. The video further shows Jefferson trying to nonverbally signal the woman who appeared at the scene toward the area where Robles found the drugs, and Jefferson's defeated body language when Browne suggested Robles to search that area. T. 490-493.

{¶ 63}    Jefferson argues that at trial, Trooper Browne denied seeing Jefferson throw anything during the foot chase. While Browne did so testify (T. 188), the video of the event three years prior to Browne's testimony indicated he did see Jefferson throw or drop something. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 2000 WL 297252 (Mar. 23, 2000).

{¶ 64}    We find sufficient evidence was presented to prove Jefferson possessed the drugs, and the jury did not lose its way in finding the same.

Failure to Appear

{¶ 65}    Last, Jefferson argues his conviction for failure to appear is against the manifest weight of the evidence.

{¶ 66}    Jefferson was charged with failure to appear pursuant to R.C. 2937.99(A) which provides "[n]o person shall fail to appear as required, after having been released pursuant to section 2937.29 of the Revised Code." Section 2937.29 states:

When from all the circumstances the court is of the opinion that the accused will appear as required, either before or after conviction, the accused may be released on his own recognizance. A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in section 2937.99 of the Revised Code.

{¶ 67}    The sole question submitted to the trial court in this matter was whether or not the bond Jefferson was released on was a personal recognizance bond. In *State v. Sciance*, 5th Dist. Muskingum No. CT970037, 1998 WL 346855, we noted: Release on own recognizance is defined as "a condition under which an individual is released in lieu of bail, i.e., upon his or her promise to appear and answer a criminal charge." Citing Barron's Law Dictionary (3 Ed.1991) 407.

{¶ 68}    Crim.R. 46(A) outlines types of bail:

(A) Types and Amounts of Bail. Any person who is entitled to release shall be released upon one or more of the following types of bail in the amount set by the court:

(1) The personal recognizance of the accused or an unsecured bail bond;

(2) A bail bond secured by the deposit of ten percent of the amount of the bond in cash. Ninety percent of the deposit shall be returned upon compliance with all conditions of the bond;

(3) A surety bond, a bond secured by real estate or securities as allowed by law, or the deposit of cash, at the option of the defendant.

{¶ 69} Pursuant to Crim.R. 46(A) then, one may be released on one or more types of bail and thus subject to criminal liability if recognizance is one condition of release. In *State v. Merlo*, 9th Dist. Summit No. 9904, 2005 WL 2300291 (April 29, 1981) the Ninth District found:

It is our opinion that so long as the court requires from defendant a recognizance as a condition of defendant's release during a criminal proceeding and that *recognizance is a part of, or is the total condition of defendant's release, defendant is subject to possible criminal liability as result of his failure to obey the terms of the recognizance.* Thus where, as here, defendant is alleged to have posted a recognizance in a low dollar amount secured by defendant's own signature, plus posting a surety bond in a sizeable dollar amount, indictment may be predicated on defendant's failure to appear as conditioned by the recognizance and ordered by the court. We note, as did the trial judge, * * * that the words 'solely' or 'only' do not appear in or refer to the recognizance spoken of in R.C. 2937.29.

{¶ 70} Emphasis added. Accord *State v. Tucker*, 5th Dist. Fairfield No.2004CA00048, 2005-Ohio-4959 ¶ 34-36.

{¶ 71} In support of his argument that he was released solely on a surety bond, Jefferson cites our opinion in *State v. Sciance* 5th Dist. Muskingum No. CT97-0037, 1998 WL 346855. The bond at issue in Sciance, however, was lacking personal recognizance language. Here, Jefferson's bond is like that in *Merlo*. It stated and required both "$100,000 surety and PR." State's exhibits 23 and 24. Jefferson initialed the condition requiring his appearance on the date of trial and all dates subsequent. *Id.* Additionally, the bond is file stamped "recognizance bond," and reflected on the trial court's docket as "Surety Bond and PR." State's exhibit 32. We find therefore, Jefferson's conviction for failure to appear is not against the manifest weight of the evidence.

{¶ 72} Upon review of the record, we find sufficient evidence was presented to support Jefferson's convictions. Further, the jury did not lose its way in convicting Jefferson for the drug offenses and failure to comply, and the trial court did not lose its way in convicting Jefferson for failure to appear. The third, fourth, and ninth assignments of error are overruled.

V

{¶ 73} In his fifth assignment of error, Jefferson argues his trial counsel rendered ineffective assistance. We disagree.

{¶ 74} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's

errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 75}   Jefferson first faults his counsel for failing to make an opening statement. Ohio courts, however, have long held that the decision to waive opening statement is a tactical decision that does not rise to the level of ineffective assistance of counsel. *State v. Williams*, 74 Ohio App.3d 686, 700, 600 N.E.2d 298 (2001); *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373 (1989). We therefore reject Jefferson's argument.

{¶ 76}   Jefferson next faults his counsel for failing to cross examine Detective Wheeler, the state's narcotics witness. Like the decision to waive opening, however, cross examination decisions are a matter of trial tactics. " 'Trial counsel need not cross-examine every witness * * *. The strategic decision not to cross-examine witnesses is firmly committed to trial counsel's judgment.' " *State v. Were*, 118 Ohio St.3d 448, 890 N.E.2d 263, 2008-Ohio-2762, ¶ 216, quoting *State v. Otte*, 74 Ohio St.3d 555, 565, 660 N.E.2d 711, 1996-Ohio-108. Decisions regarding cross-examination, therefore are within trial counsel's discretion and generally do not form the basis for a claim of ineffective assistance of counsel. *State v. Flors*, 38 Ohio App.3d 133, 139, 528 N.E.2d 950 (1987); *State v. Woods*, 4th Dist. No. 09CA3090, 2009-Ohio-6169, ¶ 25 (counsel's decision not to cross-examine witness cannot form basis of ineffective assistance of counsel claim).

{¶ 77}   Third, Jefferson argues that counsel rendered ineffective assistance by failing to object at various points throughout trial. According to Jefferson, counsel should have objected each time a state's witness testified regarding a "drug dealer profile." Counsel did object to the entire testimony of Detective Wheeler who was not part of the investigation in this matter, but rather was called for his extensive experience in drug trafficking matters. The objection was overruled. T. 442.   Additionally, questions to responding troopers regarding a "drug dealer profile" were not objectionable as Jefferson was on trial for a drug trafficking charge. Jefferson cannot, therefore, establish either *Strickland* prong.

{¶ 78}   Jefferson next faults counsel for failing to object to Trooper Browne's testimony regarding his reaction when he discovered Jefferson had a loaded firearm readily available during the foot chase. Even if this testimony was objectionable, Jefferson fails to establish that the outcome of his trial would have been different had counsel objected.

{¶ 79}   Finally, Jefferson argues counsel was ineffective for failing to introduce evidence of a civil settlement paid to him to explain his possession of a large sum of cash. While there is scant discussion on the record regarding this alleged payment, it appears it was the result of a 10 year-old conviction for possessing nearly 100 grams of cocaine, resulting in a civil forfeiture of $9,691.25 which was returned to Jefferson. T. 622-632. Decisions as to the introduction of evidence is again, a matter of trial tactics. The forfeiture matter was distantly remote in time from the instant matter and further, could have opened the door for the state to inquire as to the reason for the forfeiture, and whether or not Jefferson had any legitimate source of income. Moreover, Jefferson fails to establish

prejudice, as in any event, he possessed a large quantity of cocaine and drugs. Explaining away the cash, even if he could, would not have ensured acquittal.

{¶ 80}   The fifth assignment of error is overruled.

VII

{¶ 81}   In his seventh assignment of error, Jefferson argues the prosecutor committed misconduct. We disagree.

{¶ 82}   The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).  In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶ 83}   First, Jefferson faults the prosecutor for eliciting testimony that he was on "PRC" or parole. We note that the first time this testimony was elicited, the prosecutor asked Trooper Browne if Jefferson gave any reason for running and Browne responded that Jefferson indicated he was on PRC. Counsel for Jefferson objected and the objection was sustained. T. 228-229. The jury was instructed that questions or answers to which the court sustained objections were to be disregarded and treated as if never heard. T 520. A jury is presumed to have followed the instructions of the trial court. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637 ¶ 93.

{¶ 84}   Jefferson next argues the prosecutor presented unfair and inflammatory testimony painting him as a drug dealer. First, the prosecutor did not introduce any

testimony against any order of the trial court, and second, the state was entitled to introduce such evidence as Jefferson was on trial for trafficking.

{¶ 85}   The seventh assignment of error is overruled.

VIII

{¶ 86}   In his eighth assignment of error, Jefferson argues the trial court erred when it denied his pro se motion for a new trial. We disagree.

{¶ 87}   Crim.R. 33 governs new trials. A motion for a new trial made pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court and may not be reversed unless we find an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990). An abuse of discretion implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). A new trial should not be granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule or was thereby prevented from having a fair trial. *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, ¶ 35 (10th Dist.).

{¶ 88}   Jefferson filed his motion pursuant to Crim.R. 33(A)(2). He alleged prosecutorial misconduct, juror misconduct, and misconduct of a witness. A motion for a new trial filed pursuant to Crim.R. 33(A)(2) must be supported by affidavit pursuant to Crim.R. 33(C). "If the defendant fails to produce supporting affidavits, the trial court, in its discretion, may deny the motion summarily without a hearing." *State v. Rogers*, 68 Ohio App.3d 4, 7, 587 N.E.2d 381 (9th Dist.1990), citing *Toledo v. Stuart*, 11 Ohio App.3d 292, 293, 465 N.E.2d 474 (6th Dist.1983). Here, Jefferson failed to submit affidavits in support of his motion for a new trial and thus failed to comply with Crim.R. 33(C). Further, upon

review of the motion, we cannot say that the trial court abused its discretion in denying the motion for a new trial.

{¶ 89}    The eighth assignment of error is overruled.

X, XI

{¶ 90}    In his tenth and eleventh assignments of error, Jefferson argues his maximum consecutive sentences are unsupported by the record. We disagree.

{¶ 91}    First, we review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law.

{¶ 92}    Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477, 120 N.E.2d 118.

{¶ 93}    The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences. See *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus.

However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. A sentence is not contrary to law when it is within the authorized statutory range and the trial court states that it has considered the principles and purposes of sentencing and the seriousness and recidivism factors. *State v. Smith*, 2nd Dist. Montgomery No. 26307, 2016-Ohio-1269, ¶ 25.

{¶ 94}   Jefferson does not dispute that his sentences are within the statutory parameters. Instead he disagrees with the trial court's findings regarding the seriousness and recidivism factors and argues there was no evidence presented that he was a participant in organized criminal activity as found by the trial court. He further argues that the trial court overlooked R.C. 2929.12(C)(3): "In committing the offense, the offender did not cause or expect to cause physical harm to any person or property," and well as Jefferson's claim that he does not possess a juvenile record.

{¶ 95}   First, the term "organized criminal activity" is not defined in R.C. Chapter 2929. "As such, courts must determine on a case-by-case basis whether an offense is part of an organized criminal activity." *State v. Martinez*, 6th Dist. Wood No. WD-01-027, 2002-Ohio-735, * 6. Here, Jefferson was clearly involved in the drug trade. Testimony at trial established he possessed an extraordinary amount of cocaine – $7200 worth - divvied up into separate bags of varying weights indicative of trafficking. Testimony further established that the amount of cocaine Jefferson possessed was far more than what a drug user would commonly possess for personal use. Moreover, Jefferson also possessed an extraordinary amount of cash for which he had no legitimate explanation for possessing. The cash was split into bundles in a manner also typically seen with a

dealer or supplier of drugs. T. 225-238, 244-246. We therefore reject Jefferson's argument that the trial court's finding was inappropriate.

{¶ 96}   Second, as for Jefferson's argument that the trial court failed to address other applicable "less serious" and "recidivism unlikely" factors, "[a] trial court is not required to give any particular weight * * * to a given set of circumstances; it is merely required to consider the statutory factors * * *." *State v. DelManzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶ 23. The trial court indicated it had considered all applicable factors before imposing sentence. T. 626-627. We therefore reject Jefferson's argument.

{¶ 97}   Next Jefferson argues the trial court erred when it imposed consecutive prison terms unsupported by the record. Jefferson concedes however, that the trial court made the appropriate findings on the record before imposing consecutive sentences.

{¶ 98}   R.C. 2929.14(C)(4) requires a sentencing court to engage in a three-step analysis and make certain findings before imposing consecutive sentences. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 99} The record of the sentencing hearing indicates Jefferson was on postrelease control when he committed these offenses. Further, Jefferson's prior record includes several prior convictions for drug trafficking as well as a prior failure to comply involving a high speed chase. Additionally, Jefferson absconded before trial and by the time he was apprehended, was under federal investigation for new crimes. With this information the trial court made the appropriate R.C. 2929.14(C)(4) findings and properly imposed consecutive sentences. T. 623-624, 626-631. We therefore find the trial court did not err in imposing consecutive sentences.

{¶ 100} Jefferson's consecutive maximum sentences are supported by the record and are not contrary to law. The tenth and eleventh assignments of error are overruled.

VI

{¶ 101} In his sixth assignment of error, Jefferson argues cumulative error. We disagree.

{¶ 102}  The doctrine of cumulative error provides that a conviction will be reversed where the cumulative effect of evidentiary errors in a trial deprives a defendant of the constitutional right to a fair trial even when each of numerous instances of trial court error does not singularly constitute cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N .E.2d 1256 (1987), paragraph two of the syllabus.

{¶ 103}  Jefferson generally directs us to the assigned errors raised earlier in this appeal including testimony regarding his statement that he was on postrelease control and testimony "which painted the "drug dealer" profile." Notwithstanding this court's past reluctance to embrace cumulative error as grounds for reversal (see *State v. Mascarella*, Tuscarawas App. No. 93AP100075, 1994 WL 369452 (July 6, 1995)), we have reviewed the relevant record in this matter and we find reversible error has not been demonstrated on this basis.

{¶ 104}  The sixth assignment of error is overruled.

{¶ 105} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Delaney, J. concur.

EEW/rw