[Cite as *In re B.M.*, 2024-Ohio-1871.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF B.M. | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. William B. Hoffman, J. |
| | : | |
| | : | |
| | : | Case No. 2024 AP 02 0004 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
Court of Common Pleas, Juvenile
Division, Case No. 2022 JN 00291

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      May 15, 2024

APPEARANCES:

For Plaintiff-Appellant      For Defendant-Appellee

DIANA E. DUDGEON      LISA VITALE ARNOLD
Dudgeon & Nabors Law Group      Tuscarawas County Job
141 Front Avenue SE      and Family Services
P.O. Box 133      389 16th Street SW
New Philadelphia, Ohio 44663      New Philadelphia, Ohio 44663

Guardian Ad Litem

NIKKI REED
401 Tuscarawas Street W.
Suite 201
Canton, Ohio 44702

*Baldwin, J.*

{¶1} The Mother of B.M. ("the appellant") appeals the decision of the Tuscarawas Court of Common Pleas, Juvenile Division, granting permanent custody of the children to the appellee, Tuscarawas County Job and Family Services ("the Agency").

**STATEMENT OF THE FACTS AND THE CASE**

{¶2} B.M. was born on May 22, 2017. The appellant is the biological mother of B.M. J.M. is the biological father of B.M.

{¶3} On October 19, 2022, the Agency received an ex parte emergency order of removal for B.M. due to allegations regarding parental substance abuse, J.M.'s incarcerations, and housing concerns.

{¶4} On October 20, 2022, the Court held a Shelter Care hearing and granted the Agency temporary custody of B.M.

{¶5} On October 21, 2022, the Agency filed a Complaint alleging B.M. was neglected and dependent.

{¶6} On November 22, 2022, the trial court held a hearing where the appellant stipulated to findings of neglect and dependency.

{¶7} On December 20, 2022, the trial court adopted a case plan filed by the Agency.

{¶8} On September 15, 2023, the agency filed a motion to extend temporary custody of B.M. but withdrew the motion on October 6, 2023, because of the appellant's substance abuse relapse and voluntarily leaving substance abuse treatment.

{¶9} On January 16, 2024, the trial court held a hearing on the Agency's Motion for Permanent Custody.

{¶10}  At the hearing, Malissa Cantarero testified that she is a caseworker with the Agency and was assigned to B.M.'s case. In September of 2022, the Agency was made aware that B.M.'s father was arrested due to a probation search where law enforcement found firearms and narcotics; the Agency staff found the home not appropriate. Ceiling tiles were falling due to water damage in rooms where B.M. was staying. The appellant and B.M. were taken to a homeless shelter. The appellant was asked to leave the shelter as she tested positive for various drugs and was caught using another person's urine to try to cheat the drug tests.

{¶11}  Ms. Cantarero testified that the Agency developed case plans for the appellant, J.M., and B.M. to work toward reunification. The appellant and J.M. were to maintain a sober lifestyle, abstain from drugs or alcohol, keep clean, sanitary, safe, and stable housing over a period of time, and submit to drug screens. They also were required to attend, participate, and cooperate fully in a drug and alcohol assessment, a psychological evaluation, counseling, participate in family meetings and a parenting program. They had to maintain legal employment, cooperate with the Agency, sign all necessary releases of information, and meet with a caseworker or mentor regularly.

{¶12}  The appellant obtained housing in October of 2022 and remained there until a fire elsewhere in the building in May of 2023. She then lived in a hotel until August of 2023. In August, she moved into a townhouse and has lived there since. The appellant did well at the beginning of the case plan. She went to treatment and completed a drug and alcohol assessment. She attended counseling, obtained employment at McDonald's, and then went to work for Park Center. She was fired from Park Center and returned to McDonald's. She then obtained employment at the hotel where she stayed and was fired

after one day. She then went to work at Tastee Apple but quit in August with J.M. when they relapsed into drug use. She was not employed at the time of the hearing. She completed a psychological evaluation and assisted in her case planning goals. She submitted to drug screens until a negative test in August of 2023.

{¶13} The appellant took twenty-four drug tests. In the first three, she tested positive for THC, Amphetamine, and Methamphetamine. She then tested negative for any non-prescribed controlled substances from November 4, 2022, through July 25, 2023. Then in five of her last six drug tests, she tested positive for controlled substances, including Fentanyl, Amphetamine, and Methamphetamine. She refused several drug tests in September, October, and November of 2023.

{¶14} When the Agency sought reunification in August of 2023, the appellant started missing appointments with her mentor and psychiatrist. She was no longer communicating with her counselor and the foster mother.  The Agency reached out to attempt to get the appellant to come to the Agency for a drug test. The appellant started making excuses, saying she could not get in because she was visiting J.M.'s kids in another county. Ms. Cantarero informed the appellant that this would be a refusal and result in a positive drug screening. The appellant then decided to come into the Agency. Upon arriving, she looked very sick, was sweating, and had a fever. She claimed to have the flu. Ms. Cantarero testified it was evident that she was either high or coming down from a high. At this time, she tested positive for fentanyl. The appellant restarted treatment but did not comply. During a session, she tested positive for Methamphetamine. She entered into residential treatment but then checked herself out against medical advice.

{¶15}  The appellant notified Ms. Cantarero on January 12, 2024, that she left J.M. and was in residential treatment in Portsmouth, Ohio. Ms. Cantarero had to seek contact with the appellant from when she checked out of residential treatment until January 12, 2024. The appellant was not communicating with the Agency, her mentor, or anyone other than J.M. Ms. Cantarero, who could not locate her the entire month of November and only saw her in December because the appellant was in jail. She was released from jail on December 28, 2023. She told Ms. Cantarero she would check into residential treatment on January 3, 2024. Ms. Cantarero set a meeting with the appellant on December 29, 2023. The appellant did not attend the appointment on December 29, 2023, and did not check in on January 3, 2024. Ms. Cantarero attempted to contact her via phone, and the appellant pretended not to know who Ms. Cantarero was. Ms. Cantarero identified herself, but the appellant never responded.

{¶16}  On January 7, 2024, Ms. Cantarero noticed a missed call from the appellant. Ms. Cantarero called her back. The appellant did not seem to know who Ms. Cantarero was and was she was acting strangely. She said she was not going to give up. Ms. Cantarero did not hear from the appellant until January 12, 2024.

{¶17} The appellant completed a parenting course with the Agency, a psychological evaluation at The Village Network, and a drug and alcohol assessment. She signed all the necessary releases, and, at the beginning, she was completely compliant with the Agency's requests.

{¶18}  J.M. failed to maintain a sober lifestyle. On June 6, 2023, he was released from prison. They did not inform Ms. Cantarero of his release. He tried treatment at two separate facilities and quit going to both. He attended two or three group treatment

sessions. He met twice with a counselor and tested positive for methamphetamines during the second meeting. He missed several appointments for treatment and counseling. He completed a psychological evaluation.

{¶19} He tested positive for controlled substances during ten drug screens. The positive tests included amphetamines, methamphetamines, and buprenorphine.

{¶20} He was required to maintain lawful employment. He obtained employment at Case Farms but never showed up for work. He then got a job at Tastee Apple for a short period of time but quit. He met with a mentor until his relapse in August of 2023. He took responsibility for the appellant's relapse because they did it together.

{¶21} As of the day of the hearing, J.M. was arrested for domestic violence and in Tuscarawas County Jail.

{¶22} Ms. Cantarero said that through October 6, 2023, the appellant had substantially completed her case plan, but after the relapse, her progress fell apart. As of the hearing, Ms. Cantarero does not believe the appellant remedied the concerns that led to B.M.'s removal. The appellant has six children who are either in the care of a family or kinship provider and lost permanent custody of one child.

{¶23} B.M. is doing great in foster care. She is developmentally on target. She has bonded with her foster parents and siblings. She has no behavior issues and no health issues. The foster parents are interested in adopting B.M.

{¶24} Ms. Cantarero does not believe it is possible for B.M. to be placed with either the appellant or J.M. and found no family appropriate to place B.M. B.M. needs to be placed in a permanent, stable home in order to thrive.

**{¶25}** On redirect examination, Ms. Cantarero stated that they initially filed a Motion to Extend Temporary Custody. However, they recalled the motion because the appellant left inpatient treatment against medical advice and was still in a relapse.

**{¶26}** Next, Dr. Steven Dean testified he is employed at The Village Network as a psychologist. Dr. Dean noted that the appellant had significant trouble with drug abuse. The appellant was a daily user of both heroin and methamphetamine at one point in her life. She indicated that she had a lapse for several months prior to January of 2023. She has a history of domestic violence and being a victim of domestic violence in her relationships. She has at least six children with four different men and does not have much stability in her relationships. She also suffers from high anxiety, has trouble managing anger, setting healthy limits with others, and being assertive.

**{¶27}** Dr. Dean diagnosed the appellant with generalized anxiety disorder, stimulant use disorder, and opiate use disorder. He instructed her to avoid any further use of drugs. She was not able to effectively parent while under the influence of illegal substances.

**{¶28}** J.M. has a significant problem with drugs, both heroin and methamphetamines. He had one long term relationship for which he had three children. It ended because of his repeated imprisonment. He has a fourth child with a very brief relationship. And now he had been in a two-year relationship with the appellant and they have a child together.

**{¶29}** Dr. Dean diagnosed J.M. with anxiety disorder and antisocial personality disorder. He instructed him to stay free of drugs, to obtain employment, and to participate in therapy.

**{¶30}** Next, Nikki Reed testified that she is B.M.'s Guardian ad Litem. At the beginning of the case, the appellant was very good at remaining in contact her and did an excellent job. Ms. Reed was not informed when J.M. was released from prison. After the appellant moved out of the hotel, the Guardian ad Litem never had contact with the appellant again.  She has never spoken to J.M.

**{¶31}** Early in the case, she had no concerns about the appellant. However, the appellant's relapse caused the Guardian ad Litem to have major concerns about B.M. being placed with the appellant.

**{¶32}** J.M. did not complete much of his case plan, had a significant criminal history, and continued his drug use. It would not be appropriate to place B.M. with J.M.

**{¶33}** Next, the appellant testified that she is in a residential treatment facility and has been since January 8, 2024. She explained that J.M. returning home from prison, the fire happening in her apartment complex, and having a miscarriage in July of 2023 caused her to relapse. J.M. continued his drug use, and she accepted when he offered.

**{¶34}** The appellant testified that she has seven children and currently does not have custody of any of them. She has been in outpatient rehab twice and inpatient rehab four times. Her longest period of sobriety was a year and a half, which was before she met J.M.

**{¶35}** On January 16, 2024, the trial court granted the Agency's Motion for Permanent Custody.

**{¶36}** The appellant timely filed a notice of appeal and raised the following Assignment of Error:

**{¶37}** "I. THE APPELLANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL COUNSEL FAILED TO FULLY REPRESENT THE APPELLANT BY FAILING TO PETITION THE COURT FOR AN ORDER EXTENDING THE CASE FOR SIX MONTHS AND BY FAILING TO FULLY LITIGATE THE MATTER BY DECLINING TO CROSS EXAMINE APPELLEE'S WITNESSES."

**STANDARD OF REVIEW**

**{¶38}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer*, 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 133 S.Ct. 838 (1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶39}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both prongs of *Strickland and Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

**{¶40}** To show deficient performance, the appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland* at 688. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial process. *Strickland* at 688.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.*

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a

criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064.

*Struder, supra*, at ¶¶58-61. Even debatable trial tactics and strategies do not constitute ineffectiveness assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶41}** Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must show both: 1) that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty the appellant; and, 2) that the was prejudiced by such the alleged ineffectiveness.

## ANALYSIS

### Failure to file a Motion to Extend the case for six months

**{¶42}** The appellant argues that trial counsel was ineffective for not moving for an extension of temporary custody to the Agency to give the appellant more time to complete her case plan. We disagree.

**{¶43}** "R.C. 2151.415 does not provide that a parent may file a request for an extension of temporary custody to the agency." *Matter of A.B.*, 5th Dist. Tuscarawas No. 2023AP020013, 2023-Ohio-2679, 222 N.E.3d 712, ¶40, citing *In the Matter of T.G.*, 5th Dist. Stark Nos. 2021CA00119, 2021CA00120, 2021CA00121, 2022-Ohio-1213.

Additionally, the trial court found that B.M. could not or should not be placed with either the appellant or J.M. within a reasonable period of time. R.C. §2151.414. As the appellant does not have a legal basis for filing an extension of temporary custody, trial counsel's performance did not fall below an objective standard of reasonable representation.

**Decision not to cross-examine witnesses**

**{¶44}** The appellant also argues that trial counsel was deficient for not cross-examining Dr. Dean and the Guardian ad Litem. We disagree.

**{¶45}** Again, even debatable trial tactics and strategies do not constitute ineffectiveness assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). The Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, a defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1 988). "The strategic decision not to cross-examine witnesses is firmly committed to trial counsel's judgment." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263. The decision to cross-examine witnesses is within trial counsel's discretion and generally cannot form the basis for a claim of ineffective assistance of counsel. *State v. Jefferson*, 5th Dist. Richland No. 18CA2, 2019-Ohio-156. Accordingly, trial counsel's performance did not fall below an objective standard of reasonable representation by deciding not to cross-examine Dr. Dean and the Guardian ad Litem.

**{¶46}** Therefore, the appellant's sole Assignment of Error is overruled.

**CONCLUSION**

**{¶47}** The decision of the Tuscarawas County Common Pleas Court, Juvenile Division, is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.